```
G9MJDOEC                          Conference

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

JANE DOE,

            Plaintiff,

       v.                                15 Civ. 7726 JMF

STEVEN KOGUT,

            Defendant.

------------------------------x

                                         September 22, 2016
                                         4:12 p.m.


Before:

                 HON. JESSE M. FURMAN,

                                         District Judge


                       APPEARANCES


ZACHARY HOLZBERG,
     Attorney for plaintiff


CHRISTOPHER JOSLIN,
     Attorney for defendant
```

1                  (In open court)

2                  (Case called)

3                  THE COURT:  You may be seated.

4                  MR. JOSLIN:  Just for the record, the defendant is
5     here.

6                  THE COURT:  All right.  I will hear from you in a.
7     Moment, but I want to begin.

8                  I am going to try to contain my anger but, Mr.
9     Holzberg, I must tell you that your letter really did not sit
10    well with me.  I think that at best it is misleading and
11    disingenuous, and at worst it contains several falsehoods.  I
12    am happy to go through them, but they start with your
13    description of the initial pretrial conference where you did
14    not say you intended to retain an expert and that you had not
15    yet retained an expert.

16                 You said you did not anticipate needing or having any
17    expert discovery in this matter, and my notes and my law
18    clerk's notes clearly state as much, and consistent with that,
19    I did what I do in such circumstances; which is to say, we are
20    not going to have expert discovery in this matter.  If
21    something changes and you need expert discovery, you can make
22    an application to extend discovery for that purpose, but it
23    better be made in writing, filed before the discovery deadline
24    and filed as a motion on ECF.  No such motion was made.  Your
25    description of the initial conference is flat-out wrong.  I

1   will give you the benefit of the doubt and assume it is just
2   faulty memory and not something worse than that, but that is
3   where the problems start.
4              After that what I don't understand is how you have
5   been present for three separate conferences since the close or
6   near the close of discovery and not mentioned a word about the
7   issues that you raised in your letter, despite repeated
8   references to discovery being closed, despite my saying very
9   explicitly to Mr. Kogut and his prior counsel and Mr. Joslin at
10  the last conference that discovery in this matter was closed,
11  except for the very limited things I allowed to go forward,
12  which even that was a gift at the time that I allowed those to
13  go forward, and you didn't stand up and say, your Honor doesn't
14  understand why we need expert discovery.  You never explained
15  when we were going to do that.
16             Giving you the benefit of the doubt there was a
17  misunderstanding and you didn't understand how this process
18  works, it does not explain why for three conferences you sat
19  silently while I said discovery in this matter was closed and
20  we were proceeding to trial without raising a peep about this,
21  and it doesn't explain why it took you several days after the
22  last conference to submit this letter saying hey, wait a
23  second, Judge, I want to have an expert discovery in this
24  matter.  So I just don't get it, and there are other problems
25  on top of those that I am not even bothering to mention, but I

1    am not happy.
2            So I want you to understand that, and it better not
3    happen again because if it does, I can assure you that you will
4    suffer some sort of consequences for it, financial or
5    otherwise, all right?
6            Now, having said that, I did indicate in my
7    endorsement if you were able, consistent with your letter,
8    which did suggest that you could do this without the need to
9    adjust any of the deadlines so that if you were able to come up
10   with some sort of schedule that would be able to speak to those
11   deadlines where you file your joint pretrial order by October
12   15th, and then we are ready for trial in early November, you
13   would have a better chance of persuading me to let you proceed.
14           Have you discussed it and what are your thoughts?
15           MR. HOLZBERG:  Your Honor, I would like to start off
16   by apologizing.  It was never my intention to be in this
17   position, and I sincerely apologize if there were any
18   misrepresentations in my letter.  As you mentioned, to the best
19   of my recollection, that is what I thought we discussed and I
20   apologize for assuming otherwise.
21           That being said, regarding the instances subsequent to
22   that in which your Honor stated I did have the opportunity to
23   bring it up, I honestly have no excuse other than the fact that
24   as your Honor may be able to tell, I am somewhat new at this,
25   and I presume that at the conclusion of fact discovery, then

expert discovery took place, and being that I was within the timeline under the federal rules, I thought I had somehow covered myself.  I apologize for assuming that and just overall failing to keep your Honor in the loop and aware of the fact we had retained an expert and were requesting it during that time.

THE COURT:  It is not a function of keeping me in the loop.  I set deadlines and issue orders.  That is my role in this process, and the orders and deadlines I set didn't allow for expert discovery.  It is that kind of point.  It is a little disingenuous unless you don't understand what the rules require.

Number one, I had ordered otherwise, and the rules say, "unless the Court orders otherwise."

Number two, you say 90 days before trial, but disclosing the report on July 29th was not -- you could not know it was 90 days before trial, number one, because trial was not set and, number two, because with discovery was set to close on August 2nd.

If my memory serves me correctly, your pretrial order was due 30 days thereafter, and under the terms of the case management plan, you were supposed to be ready for trial approximately two weeks after that, which is to say, at the time you served the expert report you had to assume the possibility that you would go to trial approximately 45 days later.  So in that regard it is disingenuous to say you served

1     it within the time-frame set forth in the rules.

2              I don't want to do this any longer.  I accept your

3     apology.  Don't let it happen again and make sure you comply

4     with the letter of the rules, the letter of my own rules and

5     the letter of my orders going forward.

6              Once again, move on.  I have expressed my views and

7     made peace with this and we'll talk about the schedule.  Tell

8     me what is going on.

9              MR. HOLZBERG:  Thank your Honor.

10             I spoke with counsel earlier today regarding the

11    schedule moving forward, and counsel indicated that subsequent

12    to meeting with your Honor last week, he spoke to his expert

13    and canceled the IME of my client.  I asked if that date was

14    still available for counsel's expert.  He indicated to me that

15    his expert was no longer available that day.

16             I asked if his expert was available any other day from

17    now until the deadline for the joint pretrial order, and

18    counsel indicated that his expert was not available at any

19    point from now until then.

20             I then asked counsel if he would be able to obtain

21    another expert to find some time to conduct the IME of my

22    client, and he indicated that he would not do that.  At that

23    point we said that anything further to discuss would be brought

24    in front of your Honor today.

25             In addition, if I may, your Honor, regarding what you

1   had stated earlier, why it took several days after the prior
2   conference to write the letter to you, I was speaking with
3   Derrick about it, Mr. Derrick Smith, and we were reviewing what
4   exactly the letter was to say.  I apologize for the delay.
5             THE COURT:  Great.  Mr. Joslin.
6             MR. JOSLIN:  Your Honor, I took the liberty to getting
7   the transcript from our last conference, and at the last
8   conference --
9             THE COURT:  Mr. Holzberg, you can have a seat now.
10            MR. JOSLIN:  -- I addressed the issue of expert
11  disclosure with the court not just once, not twice, but three
12  times.  It was clear during my discussion with your Honor you
13  said let me interrupt.  With respect to expert disclosure, you
14  said, "This is not happening.  I was very clear the deadline
15  came and went."
16            What I did with respect to expert discovery was
17  because at the initial conference, based on discussions with
18  counsel, it was clear to me that there was likely not to be any
19  need for expert discovery.  So at that point your Honor last
20  week, you said there is not going to be any expert discovery.
21            I spoke to my expert, Dr. Jeffrey Brown.  I said there
22  is no need for you to block out October 4, October 5.  There is
23  not going to be any expert discovery.
24            I got a phone call this afternoon at 1:00 o'clock
25  asking to confer about expert disclosure, and I simply said to

1    counsel, I can't do it.  It is not just a matter of doing the
2    examination, it is getting a report, doing a Rule 26
3    disclosure, and then there is also the issue of depositions of
4    experts.  I don't think we can do that even with the best
5    intentions by October 17th.  I think your Honor said it best at
6    the end of our last conference, "I said no expert discovery
7    without prejudice" -- meaning to the plaintiff -- "without
8    making an application for an extension of discovery for that
9    purpose."  No one ever did that.
10            As far as I am concerned, there was no expert
11   discovery to be done in this case.  That is it.
12            MR. HOLZBERG:  If I may, your Honor, very quickly?
13            THE COURT:  Not yet.  Mr. Joslin, have you spoken to
14   Mr. Brown since --
15            MR. JOSLIN:  I haven't.
16            THE COURT:  -- since the call after the last
17   conference?
18            MR. JOSLIN:  I spoke to Dr. Brown when I first got the
19   letter memo to see if he can be available to do an examination.
20   He said I have already blocked out those dates.  It is right
21   after the Jewish Holiday, and he was doing that as a
22   consideration for me when I was first retained.
23            THE COURT:  I think it was actually in part on the
24   Jewish Holiday.  It strikes me the Jewish Holiday is irrelevant
25   here.

1    MR. JOSLIN:  It is after, just after.

2    THE COURT:  We don't need to get into debate about the
3    Jewish calendar.  I win that one.

4    Mr. Holzberg.

5    MR. HOLZBERG:  Your Honor, as counsel mentioned
6    regarding taking depositions of experts, if your Honor would
7    permit us to move forward, I feel as though we would be able to
8    find at least one morning or an afternoon for an hour for IME
9    of my client.  If we move forward, we decline to take
10   deposition of counsel's expert to meet the deadline.

11   MR. JOSLIN:  Your Honor, what counsel is suggesting is
12   that I should pick somebody else.  My client has every right to
13   pick the expert of his designation.  The reason why we're here
14   has nothing to do with any delay by the defendant.  As you
15   said, your Honor, there was no expert discovery to be done in
16   this case.  That is it.

17   When I first appeared before your Honor, I was the one
18   who said what are we doing about expert discovery?  I mentioned
19   it three times, and each time your Honor said to me it is not
20   happening.

21   THE COURT:  I understand that. My concern, and
22   believe me, I would be on firm ground saying that we're done,
23   we have our schedule, it would muck up that schedule to reopen
24   any of this, and I may well do that.  My concern is that you
25   now see an opening for a little -- and I am not suggesting you

1   are doing this -- a little bit of gamesmanship and an

2   opportunity to get one up on the plaintiff and are taking

3   advantage of the situation in a way that is not necessarily

4   fair and that two weeks ago or a week ago, whenever we were

5   here, you wanted expert discovery.

6            MR. JOSLIN:  Absolutely.

7            THE COURT:  In that regard, maybe the fairest thing is

8   to revisit that and allow both of you an opportunity to do it.

9            MR. JOSLIN:  That is not up to me.

10           THE COURT:  I am aware of that.  It is all up to me at

11  the end of the day.

12           MR. JOSLIN:  Exactly.  Your Honor, I want to be clear.

13  It is not about gamesmanship.  The orders speak for themselves.

14  I appreciate your Honor giving me an adjournment on another

15  case before your Honor yesterday.  The deadlines mean

16  something.  The orders mean something.  In this case, you

17  didn't just say it once.  You said it four times.

18           THE COURT:  Mr. Holzberg, can you tell me what the

19  need is for an expert in this case and what the expert would be

20  testifying about?

21           MR. HOLZBERG:  Yes, your Honor.  I am happy to.

22           As your Honor is aware, plaintiff alleges that the

23  defendant raped her on several occasions; and, therefore, her

24  mental state and emotional distress would be a significant

25  factor in terms of her damages in this case; and, therefore, we

1    found it more than appropriate to retain an expert, and again I
2    apologize for not disclosing this earlier, discussing it
3    earlier, but throughout the course of discovery and me dealing
4    with this case, we found it appropriate to retain an expert to
5    evaluate the plaintiff's mental state and the effect that this
6    alleged sexual assault had on her.
7         The expert's report which was disclosed on July 29th
8    is indicative of the fact that plaintiff did suffer emotional
9    distress as a result of these alleged sexual assaults.
10        THE COURT:  All right.  So let me ask you the
11   following question because what I don't want to do is affect
12   the schedule in such a way that would have an effect on our
13   trial date which, granted, I have not definitively set but I
14   told you would likely be --
15        MR. JOSLIN:  November the 7th or the week of the 14th.
16   Your Honor is going to be away at the end of October.
17        THE COURT:  Correct.  Now, so I am just thinking out
18   loud here, but from the sound of it, one option would be to
19   proceed with the current schedule, but basically not require
20   that, and if I were to allow anything with respect to expert
21   discovery to proceed, to let you do that but on a sort of
22   parallel schedule, whereby you submitted a supplemental joint
23   pretrial order with respect to those matters; that is to say,
24   it wouldn't necessarily need to happen by October 15th.
25        Is that an option as far as you're concerned?  It

1    sounds like the expert here is basically with respect to sort
2    of emotional distress/damages types of things, and in that
3    respect it is sort of discrete and wouldn't affect the
4    preparation of either the joint pretrial order or motion
5    practice.  Am I missing something?
6            MR. HOLZBERG:  I don't believe so, your Honor.
7            THE COURT:  Mr. Joslin, why shouldn't I allow that;
8    that is to say, it gives you another couple of weeks to find
9    the time to do an IME and prepare an expert report, and I'll
10   accept Mr. --
11           MR. JOSLIN:  Your Honor --
12           THE COURT:  Hold on.  I am not done.  I will accept
13   Mr. Holzberg's agreement not to seek a deposition of your
14   expert.  So it would just require an IME and production of a
15   report.  Part of the concern here is also, and I recognize you
16   were not counsel at the time, but as much as I fault Mr.
17   Holzberg for the reasons that I stated earlier, the fact of the
18   matter is that he did produce an expert report on July 29th,
19   and I didn't hear anything from defense counsel, either.
20           Defense counsel at that point could have easily come
21   to me and said hold on a second, your Honor, you didn't allow
22   for expert discovery so I don't understand why he is serving
23   this report, all of which is to say to some extent the fact we
24   are now six weeks down the road and this hadn't happened is a
25   little bit at the feet of defense counsel as well -- again, at

your predecessor and not you.  The first I heard of this was last week.

    MR. JOSLIN:  I raised it, and your Honor said to me if you think you have a valid basis to move in limine to --

    (Multiple voices)

    THE COURT:  -- you don't have to remind me what I said.  I know.  Tell me why proceeding in the manner I just described wouldn't work.  In other words, sticking with the October 17th deadline for the production, filing of a joint pretrial order, motions in limine and everything required under my rules, allowing you additional time beyond that, however, to conduct an IME and produce an expert report and submitting a supplement to the joint pretrial order with respect to your respective experts.

    MR. JOSLIN:  This isn't about gamesmanship.  We can do that.  I would like to have the opportunity to depose plaintiff's expert.

    THE COURT:  Okay.

    MR. JOSLIN:  It can be part of the remedy here they waive the deposition of my expert because of the time constraints, that may be acceptable.

    THE COURT:  All right.  I think that is the way to proceed, which is to say, we'll stick with the current schedule and deadlines.  You are to find the time to conduct an IME of the plaintiff and produce an expert report I will say no later

1   than October 24th.  There will be no deposition conducted of
2   the defense expert.
3           However, Mr. Joslin will be permitted to depose the
4   plaintiff's expert, and that deposition will also take place
5   prior to October 24th, and by October 28th I want a
6   supplemental joint pretrial order limited to issues relating to
7   the experts; that is to say, joint pretrial order and
8   everything else should be filed on October 17th as discussed
9   but not concerning the experts.  All right?
10          MR. JOSLIN:  Your Honor, I haven't had the opportunity
11  to speak to Dr. Brown who is our expert that I used and I will
12  use in this case to see what his availability is.  I am sure I
13  can plug him in.  If there is a cost to expedite this, that
14  shouldn't be borne by my client.
15          THE COURT:  Why don't you talk to Dr. Brown and see
16  what he says, and to the extent that you think there is relief
17  that would be appropriate, you can ask me for that relief.  I
18  certainly think if there is some additional costs, you have a
19  fairly good case for that cost being borne by the plaintiff,
20  but hopefully Dr. Brown can accommodate you and it will be a
21  non-issue.
22          MR. JOSLIN:  Very well.
23          THE COURT:  Anything else?
24          MR. HOLZBERG:  No, your Honor.  Thank you.
25          THE COURT:  All right.  Assuming this case is headed

1   to trial, I hope I've made myself loud and clear, have been
2   heard loud and clear that you have got work to do, both sides.
3           Now, Mr. Joslin is late to the game in that regard.
4   It is not so much as him as his predecessors perhaps.
5           MR. JOSLIN:  My client looks forward to his day in
6   court.
7           THE COURT:  He will have it if he will like it.  We
8   are adjourned.
9           (Court adjourned)