GBU5doeC

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    JANE DOE,

4                   Plaintiff,            New York, N.Y.

5              v.                         15 Civ. 7726 (SN)

6    STEVEN KOGUT,

7                   Defendant.

8    ------------------------------x

9                                         November 30, 2016
                                          4:05 p.m.
10
     Before:
11
                          HON. SARAH NETBURN,
12
                                          Magistrate Judge
13

14                         APPEARANCES

15

16   CAMPSON & CAMPSON
          Attorneys for Plaintiff
17   BY:  PAUL J. CAMPSON

18   PAUL W. VERNER
          Attorney for Plaintiff
19
     DAVID HOROWITZ, P.C
20        Attorneys for Defendant
     BY:  CHRISTOPHER S. JOSLIN
21

22

23

24

25

                 SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

GBU5doeC

1           (Case called)

2           THE DEPUTY CLERK:  Counsel, please state your name for

3     the record.

4           MR. VERNER:  Paul Verner for plaintiff, your Honor.

5           THE COURT:  Thank you.

6           MR. CAMPSON:  Paul Campson for plaintiff, your Honor.

7           MR. JOSLIN:  Good afternoon, your Honor.  Christopher

8     Joslin for the defendant.

9           THE COURT:  Good afternoon, everybody.

10          Let me begin by saying that I am viewing this as still

11    part of our settlement discussions and so I want the entire

12    transcript to be filed under seal.

13          So, Mr. Verner, you have filed a notice of appearance;

14    is that correct?

15          MR. VERNER:  I have filed a notice of appearance, your

16    Honor.

17          THE COURT:  And Mr. Campson, have you filed a notice

18    to withdraw or are you staying on the case?

19          MR. CAMPSON:  I have not filed a notice to withdraw.

20    My understanding is I was going to execute a documentation with

21    counsel today for the Court to so order my withdrawal and

22    counsel taking over.

23          THE COURT:  Okay.

24          MR. VERNER:  Pending Mr. Campson's assistance in this

25    proceeding, we were anticipating that the Court would just cut

GBU5doeC

1      an order granting the substitution.

2                    THE COURT:  Okay.  I am happy to do so orally.

3                    MR. CAMPSON:  Thank you.

4                    THE COURT:  So, Mr. Verner, I directed you to read the

5      October 26th transcript and which I assume that you have done?

6                    MR. VERNER:  I have, your Honor.

7                    THE COURT:  So, why don't you tell me what your

8      position is at this time.

9                    MR. VERNER:  Shall I stand, your Honor?  Or is sitting

10     okay?

11                   THE COURT:  However are you more comfortable.  It is

12     typical to stand.

13                   MR. VERNER:  I am more comfortable sitting.  Thank

14     you.

15                   THE COURT:  Okay.

16                   MR. VERNER:  I have read the transcript, your Honor.

17                   I note from the outset that neither Mr. Kogut nor

18     Ms. Doe were sworn in.  Number two, there is a sentence that

19     Ms. Doe uses when you are attempting to allocute her which is

20     telling regarding her trepidation at the time.  I believe that

21     appears -- let me give you the page, if I can just thumb

22     through it or I can paraphrase to begin.

23                   THE COURT:  Page 11?

24                   MR. VERNER:  She says:

25                   The Court asks, on page 10, line 6:

GBU5doeC

1        "THE COURT:  Do you accept these terms?

2        "MS. DOE:  I prefer to go forward and let him win,

3   yes."

4        Now you then reject that answer and press her for a

5   more clear and concise affirmative response.  That sentence, to

6   me, knowing nothing about this case, indicates that she had,

7   during the four hours that she had spent with your Honor and

8   with counsel in a settlement proceeding, been convinced that

9   she would not prevail in this litigation so I think that's

10  telling.  It is a flag.

11       Now, I have read the transcript as well where you

12  instructed counsel -- excuse me, I am a bit parched today --

13  you instructed counsel to present a settlement agreement within

14  30 days.  My understanding of the facts are that Mr. Joslin and

15  the defense did not present either settlement agreement nor the

16  $10,000 consideration.  So, I think from the outset there is a

17  failure of consideration.  The 30 days has passed.

18       It is clear in my speaking with Ms. Doe that she was

19  under duress.  We can address that in detail, if you wish, but

20  the day before she had undergone an expert's evaluation which

21  itself lasted several hours.  She was not happy about that.

22       You might know from the record, your Honor, that she

23  is suffering from PTSD as a result of, as alleged, the facts in

24  this case.  You would also partly understand from the record

25  that she had just lost Mr. Smith, her attorney of long course,

GBU5doeC

```
1    on the 20th of October, and then came in with Mr. Campson less

2    than a week later to these settlement conference proceedings.

3    It is clear from the November 2nd letter from Mr. Campson that

4    there was a failure in that relationship.  When it started we

5    don't know.  I would suggest to the Court that there is no way

6    to learn this file in one week.

7             So, I think that what we have here, your Honor, is a

8    situation where Ms. Doe -- and given the particular

9    circumstances of this case, the high level of emotionality, the

10   physical assault claims, the sexual assault claims, the

11   emotional trauma that she will prove to a jury if she gets her

12   day in court, led to a circumstance where she felt compelled

13   and pressured to say yes when, in the first instance in her

14   first response, she wavered when you asked her whether she

15   agreed.

16            Now, obviously you spent time with her during that

17   day.  You probably know better than I and got a feeling better

18   than I as to what transpired but she told me something only 15

19   minutes ago which is also telling to me as a litigator with

20   some experience; she said that at one point in the course of

21   the proceedings a threat came from the defendant's side that a

22   whistle-blower complaint of some sort would be leveled alleging

23   tax evasion or tax fraud -- which is of course a non-existent,

24   frivolous claim, according to her.

25            That, coupled with all the other things that I see
```

GBU5doeC

1   here, leads me to conclude that as a matter of fact and as a

2   matter of law, we don't have a settlement that can be enforced.

3   And I believe I have the case law on that and if your Honor is

4   not going to see fit to repudiate any potential settlement at

5   this point in time --

6   THE COURT:  Sorry.  I am going to interrupt for one

7   second.

8   Can I just ask who walked into the courtroom?

9   UNIDENTIFIED SPEAKER:  Press.

10  THE COURT:  This is actually a closed proceeding.

11  MR. VERNER:  I don't want any press here.

12  THE COURT:  What?

13  MR. VERNER:  I agree, your Honor; I want no press

14  here.

15  UNIDENTIFIED SPEAKER:  They are closed proceedings?

16  MR. VERNER:  I would move for that, your Honor.

17  THE COURT:  This is part of a settlement conference

18  and so we are closing the proceeding right now.

19  UNIDENTIFIED SPEAKER:  Do you mind if I ask which

20  settlement conference?

21  THE COURT:  Which case?

22  UNIDENTIFIED SPEAKER:  Yeah.

23  THE COURT:  The case is Doe versus Kogut.

24  UNIDENTIFIED SPEAKER:  Okay.  I don't think that's the

25  one I was here for anyway.  Doe versus Kogut.

GBU5doeC

1          THE COURT:  Kogut.

2          MR. JOSLIN:  K-O-G-U-T.

3          Were you on the criminal case this morning?

4          UNIDENTIFIED SPEAKER:  Which one is that?

5          MR. JOSLIN:  The case People v. Kogut.

6          UNIDENTIFIED SPEAKER:  Oh, yes, that's --

7          MR. JOSLIN:  Your Honor, this morning Mr. Kogut

8   appeared in a criminal court.  The Family Court petition as you

9   know was never withdrawn pursuant to the settlement agreement.

10  It was consolidated with the criminal proceedings in the

11  Integrated Domestic Violence part.  We understand that Ms. Doe

12  in this case was speaking to the press and invited the press to

13  the proceedings.

14          MR. VERNER:  That's unfortunately incorrect.

15          THE COURT:  Sir, you will have your opportunity to

16  speak.

17          MR. JOSLIN:  In fact, The Post was taking pictures of

18  Mr. Kogut as he was exiting the courtroom and we will address

19  that as just another breach of the settlement agreement we

20  entered into on October 26th.  That's the only reason the press

21  is here, because they were aware of the criminal proceeding

22  across the street and gleaned that we were to be here this

23  afternoon at 4:00.

24          THE COURT:  I see there is another gentlemen in the

25  back of the room.  Is that also somebody from the press?

GBU5doeC

1          MR. VERNER:  No, your Honor.  I believe that's a

2     friend of Ms. Doe.

3          MR. JOSLIN:  I was told, your Honor, that the

4     individual in the back with the pony tail is a professional, a

5     body guard for Ms. Doe.  This is not the first time --

6          MR. VERNER:  No that's not --

7          MR. JOSLIN:  Let me finish, Mr. Verner.

8          MR. VERNER:  It is the guy sitting next to Ms. Doe,

9     that's the bodyguard.

10          THE COURT:  Okay.

11          MR. JOSLIN:  This is the not the first time that we

12     have encountered this situation with Ms. Doe bringing

13     professional bodyguards to proceedings in order to protect her

14     person.  Judge Furman dealt with this at depositions wherein we

15     were going to have any future proceedings in the court house

16     without the need of professional bodyguards by virtue of the

17     fact that we have the United States Marshal Service here to

18     protect Ms. Doe.

19          THE COURT:  Okay.  Okay.

20          MR. JOSLIN:  I would ask that he be asked to leave the

21     courtroom.

22          THE COURT:  Okay.

23          You guys make this case very complicated.  The other

24     gentleman in the back of the room -- there are two gentlemen in

25     the back of the room.  Are you with the press?

GBU5doeC

1          UNIDENTIFIED SPEAKER 2:  No, your Honor.  I am a

2     personal friend of the plaintiff.

3          THE COURT:  Personal friend of the plaintiff.  Okay.

4          It seems to me that either we are agreeing to close

5     the proceeding because this is ongoing settlement discussions

6     in which case only lawyers and parties are allowed in the

7     courtroom, or we are opening the court up.  I think where this

8     is headed is that there is going to be a motion to enforce the

9     settlement contract, I think that's probably where we are

10    headed which is going to mean that everything is going to be

11    revealed anyway so I am not sure that continuing to seal this

12    proceeding is essential.

13         MR. VERNER:  I would agree.  And, your Honor, I was

14    actually going to suggest, if it is not a motion to enforce it

15    is going to be motion for declaratory judgment that the

16    settlement is unenforceable by me.

17         THE COURT:  Okay.  All right.

18         So I am going to vacate my prior order requesting that

19    you place this conference under seal.  We will keep the

20    courtroom doors open as we are ordinarily obligated and we will

21    proceed.

22         Okay, where were we?  I believe -- I am not sure where

23    we were.

24         MR. VERNER:  I think I was closing up, your Honor.

25         As I said, there is an indicia of duress that the Doe

GBU5doeC

plaintiff was suffering from during the settlement proceeding.
I don't know whether the Court was made cognizant of it.  I
don't know to what extent a $10,000 consideration of settlement
bespeaks given the allegations in this case to the level of
duress that occurred the day before and the day of that
settlement.  And I think that once we have fully briefed the
Court will be fully cognizant of the level of duress that the
Doe plaintiff was suffering from and agree with me, given other
circumstances including the failure to be sworn, the failure of
the opposing party to actually tender consideration in
furtherance of the settlement or an agreement which was so
ordered by this Court to be consummated within 30 days.

      All of these factors lead to a failure of settlement
and if it makes any difference at this point, the plaintiff
certainly does not want to settle.

      THE COURT:  Okay.  Yes.  Let me hear from you, please.

      MR. JOSLIN:  Your Honor, I am first going to address
the issue concerning the consideration that Mr. Verner raises.
I think if he read the allocution carefully, your Honor hoped
that we would submit a settlement agreement within two weeks
after the 26th of October where we convened and reached an
agreement to the settle the matter for $10,000.  In fact, the
consideration was that within 30 days after the execution of
the agreement by the parties, the defendant would tender to the
law offices of Mr. Campson, the sum of $10,000.  I believe

GBU5doeC

1   that's spelled out very specifically in the agreement that was

2   memorialized on the record on October 26th, 2016.

3           What happened, to answer Mr. Verner's question as to

4   why the settlement agreement was not submitted, was that I

5   ordered the minutes and I received the minutes on November 4th,

6   2016, which were the material terms that were going to be

7   memorialized in the written agreement.  I furnished a courtesy

8   copy to Mr. Campson.

9           Shortly thereafter Mr. Campson submitted a letter to

10  the Court wherein he advised the Court that he sought to be

11  relieved as counsel.  My dilemma then was who do I negotiate

12  the terms of the settlement with?  Mr. Campson, who has now

13  sought to be relieved?  Or do I wait for further action of the

14  Court, maybe Ms. Doe proceeds pro se and I certainly could not,

15  based on the history of this case, negotiate a written

16  settlement agreement with Ms. Doe who has, at least on two

17  occasions, accused me of criminality.

18          So, I waited to see how this was going to play out as

19  to who I would actually work the settlement agreement out with.

20  In the meantime, November 10th came and went.  Mr. Campson

21  represented on the record that he would, as the attorney for

22  the plaintiff, go to the Family Court and withdraw the family

23  court petition which was part of the consideration in reaching

24  the settlement agreement with Ms. Doe.

25          I notified Mr. Campson by e-mail what the outcome of

GBU5doeC

that was and I learned that the Family Court petition was never

withdrawn, in fact now it's in criminal court as part of the

Integrated Domestic Violence part and Mr. Kogut is still under

threat that he could potentially violate this petition which

seeks a permanent order of protection.

So, the consideration was clearly laid out in your

Honor's allocution of the parties to this case and you even

inquired as to the attorneys did you understand all of the

material terms? of which Mr. Campson and I said we did.  That's

the reason why the agreement was never submitted or executed by

the parties.  In fact, your Honor even made it part of the

record that the agreement need not be filed with the Court

unless there was a breach of the agreement which we now know

the plaintiff never intended to enter into this agreement in

good faith.

I mean I don't believe for one minute, after we spent

almost five hours together, that the plaintiff was under some

sort of duress, that she was unable to understand the nature of

her actions.  She interacted with the Court for hours.  Your

Honor was very careful -- and I know I raised it to the Court

that we wanted this allocuted for the very reason that we would

be here today -- the fear of being brought back to court by

Mrs. Doe, once again, that somehow she didn't understand the

terms of the settlement, that she was under duress, that the

amount wasn't sufficient based on her allegations.  I think one

GBU5doeC

```
 1    of the reasons that prompted her to come to her senses was the

 2    defense that was going to be mounted against her.

 3             THE COURT:  It is not your place to --

 4             MR. JOSLIN:  Well, here is the bottom line, your

 5    Honor.

 6             THE COURT:  -- to make any suppositions about why she

 7    has done what she has done.

 8             MR. JOSLIN:  Here is the bottom line.

 9             The bottom line is what is the point, as a matter of

10    public policy of having parties come to settlement conferences,

11    engage in settlement negotiations with the Court over hours,

12    allocute the parties to ensure that they're not under duress,

13    that they're not suffering from some infirmity, that they

14    understand what they're doing, and then a month later, after

15    some reconsideration, they come back to the Court and say I

16    want a do-over.  I want a trial.

17             She understood that when we were here.  When she made

18    that statement to your about let's go to trial, I would rather

19    see Mr. Kogut win, you were very clear.  You said no, no.  It

20    is either a yes or no, Mrs. Kogut -- Ms. Doe.  Do you

21    understand that?  And she understood it.  And once again, your

22    Honor, you asked her that question and she answered in the

23    affirmative that she wanted the case settled.

24             So, what are we to have?  Every time a litigant after

25    a case is allocuted feels that somehow they got the short end
```

GBU5doeC

1    of the stick where they feel that now they may prevail and come

2    back to the Court and say we need to undo this because I was

3    under duress?  Every case that involves litigation has some

4    level of duress and I am sure your Honor did not see any duress

5    in the sense that Mr. Kogut or myself or any member that was

6    here at the time of the negotiations was trying to influence

7    her in some way or intimidate her in some way.  And these

8    allegations now that she raises for the first time to

9    Mr. Verner that my client or myself said something about tax

10   evasion, that we were going to have her prosecuted under some

11   whistle-blower statute, is absurd.  It never happened.  I never

12   had any communication with her.  She was in the back.  We were

13   separated.  And there was no communication.  In fact,

14   Mr. Campson will note for the record that we waited to take the

15   elevator down so that there would be no communication, that we

16   would not be in the same proximity to one another so that for

17   the very reason that we didn't want to be accused of something

18   that didn't happen and this isn't the first time that these

19   allegations have been made.

20            THE COURT:  Okay.

21            MR. VERNER:  May I be heard briefly on that point,

22   your Honor?  I want to clarify what I said.

23            THE COURT:  Sure.

24            MR. VERNER:  It wasn't anybody from the defendant who

25   said that.  According to the plaintiff, and please correct me

GBU5doeC

1   if it is a mistaken fact, your Honor, but what I was informed

2   of this afternoon was that your Honor spoke to the plaintiff

3   directly and indicated that there was a threat being made about

4   tax evasion during the settlement conference by the defendants.

5   It did not come direct from the defendants.  I don't know

6   whether that is what your Honor recollects but that is the

7   mental impression that my client was left with and she so

8   informed me of that.

9        So, I didn't mean to cast aspersions against Mr. Kogut

10  or his counsel Mr. Joslin on that and I am sure things like

11  that, discussions like that occur during settlement

12  conferences.  Certainly I have had my fair share of those.  But

13  the point is, on the tail end of losing her attorney Mr. Smith

14  who claimed, as you will see in the declaration in support of

15  my motion, that this case was killing him, that he had chest

16  pains because of it, that being engaged or having Mr. Campson

17  engaged by Mr. Smith, it is my understanding -- and not being

18  in a position, with all due respect to Mr. Campson -- to come

19  up to speed on this file, it has taken me a week and I am

20  halfway there, she felt she was a bit abandoned.  And four

21  hours in a case that involves psychological damage, long-term

22  physical and sexual abuse -- those are the allegations, I'm not

23  here to talk to the jury -- but this is what the complaint

24  says.  I believe my client.  I believe she is still

25  traumatized.  She is a bit of a battered turnip if you ask my

GBU5doeC

1    opinion.  Does she require special care and handling?  I know I

2    personally have to give that.  And I think maybe the Court was

3    not quite aware of that sensitivity and treated it as if it was

4    more of a commercial litigation.  I'm not sure.  I'm

5    hypothesizing.

6              THE COURT:  Sir, you don't know me.

7              MR. VERNER:  I don't, your Honor.

8              THE COURT:  Honestly, I am offended.  Seriously.

9              MR. VERNER:  I'm sorry.  I apologize.

10             THE COURT:  Seriously.

11             MR. VERNER:  We actually have done some business in

12   the courtroom before, your Honor.

13             But, the point is this is a special case.  It is not

14   the standard case that this Court sees, I think, and I think

15   that the circumstances that we had on October 26th are peculiar

16   and I think that, legally, we have a failure of the settlement

17   which might have been admitted to at one point in time by

18   Ms. Doe.

19             THE COURT:  Okay.

20             Mr. Joslin, I take it from your remarks that it is

21   your desire to press the settlement that was addressed at the

22   conference, or -- Ms. Doe would like to proceed with her case

23   so the question to you is whether or not you want to move to

24   enforce the settlement agreement or whether or not you also

25   want to proceed with the litigation.

GBU5doeC

1          MR. JOSLIN:  Your Honor, we would move to enforce the

2    settlement agreement that was entered into on October 26, 2016.

3          THE COURT:  Okay.  Let's set a briefing schedule for

4    that motion.  I appreciate that we are getting towards the

5    holiday season.  Is this something you could get filed before

6    the Christmas holiday or do you want to file it early January?

7          MR. JOSLIN:  I would prefer early January, your Honor.

8    I have a trial on December 7th in Westchester County.

9          MR. VERNER:  That's fine with me, your Honor.

10         THE COURT:  Okay.  I will give you until January 6 to

11   file your motion.  It will be a motion to enforce the

12   settlement agreement.

13         MR. VERNER:  Your Honor, I am respectfully requesting

14   cross-motion -- leave to cross-move.

15         THE COURT:  What are you cross-moving for?

16         MR. VERNER:  Well, I may not.

17         THE COURT:  Declaration of what?

18         MR. VERNER:  I want the possibility.

19         THE COURT:  Possibility for filing what motion?

20         MR. VERNER:  Again, your Honor, I'm not sure yet, but

21   I want the possibility open to me, if I could.  In other words,

22   it may be that I am actually entitled to a declaratory

23   judgment.  While it might seem to be the mirror image to the

24   Court at this point in time it might not exactly be, for

25   appellate purposes, a mirror image.

GBU5doeC

1          THE COURT:  I take it you haven't thought this

2   through?

3          MR. VERNER:  I am only a week in, your Honor, so.

4          THE COURT:  You are asking for relief right now.  I am

5   not quite sure what --

6          MR. VERNER:  All I want is leave to file a

7   cross-motion, your Honor.

8          THE COURT:  I don't want to have a bunch of motion

9   papers that I have to deal with --

10          MR. VERNER:  I understand.

11          THE COURT:   -- if there is no basis.

12          So, the defendant is going to move to enforcement

13   settlement agreement.  You are going to oppose that.  You tell

14   me you think there is some motion to be filed.  I am not going

15   to prohibit you from filing a motion though it is entirely

16   unclear to me what motion it would be you would be filing.

17          MR. VERNER:  Shall I send you a letter of what exactly

18   it is, your Honor?

19          THE COURT:  You are going to oppose the motion and if

20   you think there is a basis for filing an affirmative motion,

21   you can do so.

22          MR. VERNER:  Thank you, your Honor.

23          THE COURT:  If I think that is just some way to get

24   the last word in --

25          MR. VERNER:  Oh no.  I understand.

GBU5doeC

1          THE COURT:  -- then I'm not going to give you an

2     opportunity to file a reply.

3          MR. VERNER:  I understand, your Honor.  Thank you.  I

4     appreciate that.

5          THE COURT:  When would you like the opportunity to

6     file the opposition and whatever motion you think is

7     appropriate?

8          MR. VERNER:  I only need two weeks on the October 6th

9     date, your Honor.

10          THE COURT:  Okay.  So I will give you -- it is January

11     6th, not October 6th.

12          MR. VERNER:  Oh, I'm sorry.  Yes.

13          THE COURT:  January 20th will be when your opposition

14     will be due.

15          MR. VERNER:  Thank you.

16          THE COURT:  And I will give the defendant until

17     January 31st to file any reply brief.

18          At this point I don't think there is anything to be

19     done with respect to the ongoing state court proceedings.

20          MR. VERNER:  If I could address that?

21          My understanding, and I did not appear today, I'm not

22     qualified nor do I think it is needed -- it appears that

23     because of the *sua sponte* referral over to the Domestic

24     Violence unit that has a life of its own, and whilst the

25     plaintiff may have been a complainant at one point in time she

GBU5doeC

1    is more of a witness right now.  Even if she were to attempt to

2    extract herself as a complainant, she will still be a witness

3    and I am certainly not going to attempt to require a client of

4    mine to fail to cooperate with the criminal authorities, nor

5    alter any prior statements that she has made.  So.

6            THE COURT:  I think she can withdraw her petition,

7    which is what she agreed to do at the settlement conference.

8    And it may be that after this motion is filed, if I determine

9    that the settlement that is spelled out in this conference and

10   on this transcript is the binding and enforceable settlement

11   agreement, then she will be obligated and at that point

12   Court-ordered to withdraw her petition.  I agree with you that

13   if the prosecution decides to proceed with the case she

14   certainly has to comply with whatever direction she is getting

15   from the government lawyers, but that seems to me a separate

16   part.  I mean, nobody has suggested in the settlement agreement

17   that she agree that the proceedings would cease.  She merely

18   represented that she would withdraw her application.

19           MR. VERNER:  I understand, your Honor.

20           MR. JOSLIN:  Your Honor, to that point, the cases are

21   proceeding on two separate tracks; the criminal case is on for

22   trial at the end of February.  The Family Court petition, which

23   has been consolidated for the purposes of trying to adjudicate

24   both issues, is on for trial in March.  And your Honor is

25   correct in that the plaintiff in this case, who is the

GBU5doeC

1    petitioner in the Family Court matter, can withdraw that

2    petition.

3         THE COURT:  Sorry.  The criminal matter is in

4    February?

5         MR. JOSLIN:  Yes, your Honor; February 6th it is on

6    for trial.  And the domestic -- the Family Court petition which

7    seeks a permanent order of protection against Mr. Kogut is on

8    in March.

9         THE COURT:  And the criminal trial, is that a criminal

10   charge that will he violated the temporary order of protection?

11   Is that what that is?

12        MR. JOSLIN:  Yes, your Honor.

13        THE COURT:  Okay.  Do those two Courts speak to each

14   other?  I mean if the criminal trial -- if the charges are

15   dismissed or if the defendant is acquitted, is there still an

16   ongoing petition to convert?

17        MR. VERNER:  I don't think so, your Honor, but I'm no

18   maven in that realm.

19        MR. JOSLIN:  No, it can, because the criminal court

20   case deals with a violation of an order.  The petition which

21   seeks a permanent order of protection has a factual basis in

22   which the Court would have to make a determination.

23        THE COURT:  Right.  It also has different burdens of

24   proof and things like that.

25        MR. JOSLIN:  Yes.

GBU5doeC

| | |
|---|---|
| 1 | THE COURT:  Okay.  Well, I will do my best to address |
| 2 | the issue.  I don't think that my decision on this motion will |
| 3 | have a material effect one way or another on the criminal trial |
| 4 | so I don't see the February 6th deadline or date as being |
| 5 | meaningful one way or the other as far as my duties. |
| 6 | Okay.  I will look for the -- |
| 7 | MR. CAMPSON:  Your Honor, just you indicated that you |
| 8 | would orally grant my application to be relieved as attorney. |
| 9 | THE COURT:  Yes. |
| 10 | MR. CAMPSON:  I make that request. |
| 11 | THE COURT:  Sure, and I do grant it and I will issue a |
| 12 | one-sentence order today to make that clear on the docket. |
| 13 | MR. CAMPSON:  Thank you, your Honor. |
| 14 | THE COURT:  I assume, Ms. Doe, that is your wish?  You |
| 15 | are not opposing to having Mr. Campson -- |
| 16 | MR. VERNER:  It is, your Honor. |
| 17 | THE COURT:  Yes?  Okay. |
| 18 | Okay.  We are adjourned.  Why don't I ask that the |
| 19 | plaintiff and her people and her lawyers leave the courtroom |
| 20 | first to avoid any issues.  I will ask that the defendant and |
| 21 | his lawyer remain here and take a few minutes before you head |
| 22 | out. |
| 23 | MR. VERNER:  Thank you, your Honor.  I appreciate your |
| 24 | time. |
| 25 | THE COURT:  Thank you. |

o0o